# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00659-CV

### Global Santa Fe Corporation, f/k/a Sante Fe International Corporation, Appellant

### v.

### Texas Property and Casualty Insurance Guaranty Association, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN-301047, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

The issue in this case is whether the phrase "paid on behalf of" as it is used in article 21.28-C, section 11(b) of the insurance code requires the Texas Property and Casualty Insurance Guaranty Association (the Association) to apportion responsibility among multiple insureds covered under a single insurance policy prior to seeking recoupment from a net worth insured.[1] The Association demanded payment of $300,000 from Global Santa Fe Corp. (Global) based on a

---

[1] We will refer to article 21.28-C, section 11(b) as the "net worth recoupment statute" throughout this opinion. The net worth recoupment statute grants to the Association the right to recover the amount of any covered claim paid on behalf of any insured whose net worth exceeds $50,000,000 and whose liability obligations to other persons are satisfied in whole or in part by payments made under the Texas Property and Casualty Insurance Guaranty Act (the Guaranty Act). *See* Act of May 16, 1995, 74th Leg., R.S., ch. 275, § 1, 1995 Tex. Gen. Laws 2616, 2616. We will refer to an insured who meets this description as a "net worth insured."

contribution the Association made to settle a suit filed against Global after its insurance provider became impaired.[2] When Global refused to pay, the Association filed suit. The trial court granted the Association's motion for partial summary judgment and ordered Global to pay the Association. On appeal, Global contends that the trial court misconstrued the statute as there was no evidence of how much contribution was paid solely on behalf of Global because the Association failed to properly apportion its contribution among the multiple insureds. We agree with the trial court that the net worth recoupment statute does not require apportionment between multiple insureds.

## BACKGROUND

In July 1999, Shane Hancock was injured when his motorcycle was struck by a vehicle driven by Albert Tortolano, an employee of Sphere Supply, Inc. (Sphere). Sphere is a wholly-owned subsidiary of Global. Tortolano's vehicle was owned by Sphere and was covered by a commercial auto policy issued to Global by Reliance National Indemnity Company (Reliance). Hancock sued Tortolano, Sphere, and Global alleging that they were each liable for his damages from the accident. The Reliance auto policy covered Hancock's claims.

In October 2001, Reliance was designated an impaired insurer, triggering the Association's statutory obligation to pay its covered claims.[3] Pedro Dilan, a claims examiner for the

---

[2] An insurance provider is impaired if it has been placed in temporary or permanent receivership or liquidation by a court based on a finding of insolvency or it has been placed in conservatorship after the insurance commissioner has determined it to be insolvent. Tex. Ins. Code Ann. art. 21.28-C, § 5(9) (West Supp. 2004-05).

[3] A "covered claim" is an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage and not in excess of the applicable limits of an insurance

2

Association, determined that Hancock's claims qualified as a covered claim under the Act and recommended that the Association contribute the maximum of $300,000 towards settlement in exchange for a full and final release of all claims against all of the named defendants. In a letter explaining the Association's position, Mr. Dilan also advised that the Association would not waive its statutory right to seek net worth recoupment from Global.[4] In October 2002, all parties agreed to a settlement. In all, Mr. Hancock received $800,000—$300,000 from the Association and $500,000 from Global.

---

policy covered by the Act. Tex. Ins. Code Ann. art. 21.28-C, § 5(8) (West Supp. 2004-05). An individual covered claim is limited to $300,000. *Id.*

> [4] At the time the parties settled, the net worth recoupment statute stated:
>
> The Association is entitled to recover from the following persons the amount of any covered claim paid on behalf of that person under this Act:
>
> (1) any insured, other than an insured who is exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986 by being described by Section 501(c)(3) of that code, whose net worth on December 31 of the year next preceding the date the insurer becomes an impaired insurer exceeds $50,000,000 and whose liability obligations to other persons under a policy or contract of insurance written, issued, and placed in force after January 1, 1992, are satisfied in whole or in part by payments made under this Act; and
>
> (2) any person who is an affiliate of the impaired insurer and whose liability obligations and liability obligations to other persons are satisfied in whole or in part by payments made under this Act.

Act of May 16, 1995, 74th Leg., R.S., ch. 275, § 1, 1995 Tex. Gen. Laws 2616, 2616 (amended 2003) (current version Tex. Ins. Code Ann. art. 21.28-C, § 11(b) (West Supp. 2004-05).

In January 2003, the Association made a written demand upon Global for the $300,000 paid on Global's behalf. Global refused to pay, claiming that the Association's contribution was not paid solely on Global's behalf when there were multiple insureds covered under its insurance policy that were named as defendants who also benefitted from the Association's contributions. Global posited that because the settlement agreement did not apportion exactly how much of the Association's contribution was paid on behalf of each insured, it was unclear how much, if any, was paid on behalf of Global. Global maintained that the Association could not recover any of its contribution unless it could produce evidence demonstrating what portion of the contribution was paid on behalf of Global.

The Association filed suit. The trial court granted the Association's motion for partial summary judgment on its declaratory and statutory entitlement claims. The Association then dropped all other claims against Global, and the trial court entered a final judgment. This appeal followed.

## STANDARD OF REVIEW

We review the trial court's summary judgments *de novo*. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When reviewing a motion for summary judgment, the court takes the nonmovant's evidence as true, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in favor of the nonmovant. *M.D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Under Texas Rule of Civil Procedure 166a(c), the moving party bears the

burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

## DISCUSSION

The Guaranty Act is designed to provide a mechanism for the timely payment of covered claims under certain insurance policies while also providing a partial safety net to policy holders in the event of insurer insolvency. *See* Tex. Ins. Code Ann. art. 21.28-C, § 2 (West Supp. 2004-05). To accomplish this, the Association calculates the amount of funds necessary to pay the covered claims of an impaired insurer and assesses all non-impaired insurers to cover these payments in an amount directly proportional to their percentage of net premiums written for the preceding calendar year. *See id*. § 8(a-c). In many instances the maximum total assessment will prove insufficient to pay all covered claims of an impaired insurer.

In 1992, the Guaranty Act was significantly overhauled and the net worth recoupment statute was added as a means of addressing funding gaps inherent in the assessment system. The net worth recoupment statute was modeled on similar statutes used successfully in other states. *See* House Ins. Comm., Bill Analysis, Tex. H.B. 62, 72d Leg., 2d C.S. (1992). The wording of the Texas statute was essentially the same as the one found in the Post-Assessment Property and Liability Insurance Guaranty Association Model Act, written by the National Association of Insurance

5

Commissioners (the Commissioners).  The Commissioners felt that a net worth recoupment provision provided  more funds for those insureds in real need of protection and less for those insureds capable of self-insuring or making wise choices in purchasing insurance.  *See* 1986 NAIC Proc. 1st Qtr., 431 (Guaranty Fund task force suggesting that large corporations are usually better equipped than individual consumers to evaluate financial health of insurance companies). Additionally, the Texas Legislature clearly understood that the net worth recoupment statute deprived large corporations of the Act's protection.  *See* Senate Econ. Dev. Comm., Bill Analysis, Tex. S.B. 391, 74th Leg., R.S. (1995) (stating that "corporations that paid millions in premiums were suddenly divested of the Act's protection" as result of net worth recoupment statute).

While Global does not disagree that the net worth recoupment statute was designed to provide a mechanism for the Association to recover from a net worth insured, it contends that the phrase "paid on behalf of" implies that in a situation where there are multiple insureds covered under a single policy, the Association must prove the exact dollar amount paid on behalf of each insured before seeking recoupment.  Thus, because the settlement agreement here did not apportion exactly how much of the Association's contribution was paid on behalf of each insured, it was unclear how much, if any, was paid on behalf of Global.  Therefore, Global avers that the Association was not entitled to recoupment, and that the summary judgment should have been denied.

Statutory construction is a question of law, which we review *de novo*.  *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002).  Our goal is to ascertain and give effect to the legislature's intent for the provision in question.  *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803,

6

805 (Tex. 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. §§ 311.011, 312.002 (West 1998) (mandating that "words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly" and "if a word is connected with and used with reference to a particular trade or subject matter or is used as a word of art, the word shall have the meaning given by experts in the particular trade, subject matter, or art"); *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999).

The phrase "paid on behalf of" in the net worth recoupment statute is a term of art employed by the legislature to refer to a third-party claim. A third-party claim is one in which the insurer, as a representative of an insured, pays a third-party rather than paying the insured directly as it would do in a first-party claim. *See* Glossary—Common Insurance Terms, *available at* http://www.tdi.state.tx.us/consumer/glossary.html (defining third-party loss as "a situation involving a person other than the insurer and the insured; i.e., a person making a liability claim against the insured") (last modified Nov. 1, 2004). Acting on behalf of a person is acting as "a representative of or proxy for" that person. The Random House College Dictionary 122 (Revised ed. 1984). Thus, when an insurer pays a third-party claim, it does so on behalf of the insured.

The phrase "paid on behalf of" does not refer to the amount of economic benefit an insured receives from the Association's contribution; it refers to the fact that the Association has paid a covered claim to satisfy the liability of an insured to a third party claimant. Such a claim would have been paid by the insurer if it had remained solvent. Therefore, if the Association pays a covered claim that was filed against multiple insureds covered under a single policy then it does so on behalf

7

of all the insureds. If the legislature intended the phrase to refer to the exact amount of economic benefit an individual insured received as a result of the Association's contribution, it could have used the language "paid on behalf of that person *exclusively*." It did not. We hold that the plain meaning of the phrase "paid on behalf of," when used in the context of the insurance industry, does not indicate that the Association must apportion a contribution made to settle a single claim among multiple insureds before seeking recoupment from a net worth insured.

In this case, there is one covered claim that involves multiple insureds covered under a single policy. The Association paid $300,000 to Shane Hancock on behalf of all of the insureds to assist in settling the underlying litigation. However, only Global qualifies as a net worth insured from whom the Association could seek recoupment.[5] *See* Act of May 16, 1995, 74th Leg., R.S., ch. 275, § 1, 1995 Tex. Gen. Laws 2616, 2616. Furthermore, Global was statutorily required to reimburse any amount paid by the Association on Global's behalf, despite the fact that other, less wealthy insureds also benefitted from the Association's contribution. *See id.* The Association properly demonstrated to the trial court that no issue of material fact existed with regard to the meaning of the phrase "paid on behalf of" and that it was therefore entitled to judgment as a matter of law on its declaratory and statutory entitlement claims. We overrule Global's contention and affirm the trial court's partial summary judgment.[6]

---

[5] Global does not dispute that the Association's summary judgment evidence demonstrated that its net worth exceeded $50,000,000 on December 31, 2000, or that the settlement agreement satisfied its potential liability obligations to Shane Hancock in whole or in part.

[6] Because we hold that Global was statutorily required to reimburse the $300,000 paid by the Association to Shane Hancock on Global's behalf, we need not reach Global's remaining issues. *See* Tex. R. App. P. 47.1 (court must address issues necessary to final disposition of appeal).

## CONCLUSION

Because we hold that the Association is not required to apportion a payment made on behalf of multiple insureds covered under a single insurance policy in order to seek recoupment from a net worth insured, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   December 2, 2004

9