# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

============================

## ON MOTION FOR REHEARING

============================

## NO. 03-03-00764-CV

**Bobby Webb, Appellant**

**v.**

**Texas Property and Casualty Insurance Guaranty Association, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. GN303708, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Texas Property and Casualty Insurance Guaranty Association has filed a "motion to clarify," asking that we issue a revised opinion. Because the motion requests a new opinion and, therefore, a new judgment, we will treat the motion as a motion for rehearing. We grant the motion for rehearing, withdraw our opinion and judgment dated June 8, 2005, and substitute the following opinion.

In 1998, while driving through Louisiana, appellant Bobby Webb was involved in an accident caused by a vehicle driven by Leroy Shiloh. Shiloh was employed by and acting in the course and scope of his employment with CX Transportation, a subdivision of TIC United Corporation, which is a Texas resident. In March 1999, Webb sued Shiloh and CX Transportation

in a Louisiana district court, and TIC United appeared on behalf of CX Transportation, submitting to the jurisdiction of the Louisiana court. While that suit was pending, TIC United filed for bankruptcy in Texas. While TIC United's bankruptcy proceeding was pending, Webb amended his lawsuit to add as a defendant Reliance National Insurance Company, TIC United's insurer, which had home offices in Wisconsin and administrative offices in New York. Thereafter, Reliance National was declared an impaired insurer by the Pennsylvania Department of Insurance.

In September 2003, Webb filed this suit against appellee the Texas Property and Casualty Insurance Guaranty Association ("the Association"), asserting a right to recover under the Texas Property and Casualty Insurance Guaranty Act ("the Guaranty Act" or "the Act"). *See* Tex. Ins. Code Ann. art. 21.28-C (West Supp. 2005). The Association filed a plea to the jurisdiction, asserting that Webb lacked standing to sue the Association, basing its argument on the general rule that an injured third-party lacks standing to sue an insurer until liability is established. *See Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208 (Tex. App.—Dallas 1998, pet. denied). The Association further argued that there was no justiciable controversy without a determination of Reliance National's legal obligation to pay damages and that without that determination, Webb was seeking an improper advisory opinion. Webb countered that he need not show that he would be able to bring a direct action against Reliance National because the language of the Guaranty Act provides for a direct action against the Association and that an action against TIC United would be a waste of time and resources. The trial court granted the Association's plea and dismissed the case. Webb appeals, contending that he should be allowed to proceed directly against the Association without being required first to obtain a judgment against TIC United, which is bankrupt and whose insurer is in

2

liquidation. Webb contends that the Association is obligated to pay his "covered claim" and that requiring him to obtain a judgment against TIC United would thwart the purposes of the Guaranty Act. We affirm the trial court's order dismissing the cause.

**Standard of Review**

A plea to the jurisdiction seeks the dismissal of a cause of action without regard to the merits of the claims. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In reviewing the granting of a plea to the jurisdiction, we liberally construe the pleadings in favor of jurisdiction and look to the plaintiff's intent. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *City of San Angelo v. Smith*, 69 S.W.3d 303, 305-06 (Tex. App.—Austin 2002, pet. denied). To prevail on its plea to the jurisdiction, the defendant must show that, assuming all factual allegations in the plaintiff's pleadings are true, there is a jurisdictional defect apparent on the face of the pleadings that would be impossible to cure. *Smith*, 69 S.W.3d at 305. "When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). In deciding a plea to the jurisdiction, the trial court should hear evidence as necessary to the jurisdictional issues, but the plaintiff is not required to preview his case on the merits to establish jurisdiction. *Blue*, 34 S.W.3d at 554-55.

Subject-matter jurisdiction refers to the kind of controversies a court has authority to hear, authority conferred by constitution, statutes, and the pleadings. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Subject-matter jurisdiction includes the issues of standing and

ripeness. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001) (ripeness); *Blue*, 34 S.W.3d at 553-54 (standing). Standing implicates the Texas Constitution's open courts provision, which contemplates court access only for litigants suffering an injury. *Texas Ass'n of Bus.*, 852 S.W.2d at 444. "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Id*. at 446 (quoting *Board of Water Engineers v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955)). Ripeness is one aspect of justiciability. *Perry*, 66 S.W.3d at 249. In examining the ripeness of a claim, we determine whether a dispute has matured to a point warranting a court decision, asking whether the claim involves uncertain or contingent future events. *Id*. An opinion issued in an unripe case is an improper advisory opinion because it addresses only hypothetical injuries and does not remedy actual or imminent harm. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444. A claimant seeking to establish ripeness need only show that the facts have developed sufficiently that injury is imminent or likely. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000).

## Discussion

On appeal, Webb asserts that the Guaranty Act provides him, an injured third-party, a direct statutory cause of action against the Association. *See generally* Tex. Ins. Code Ann. art. 21.28-C. The Association argues that Webb is barred from bringing this suit both by (1) standing because the Act does not allow for a third-party who has not obtained a judgment or settlement establishing the insured's liability to file a claim against the insurer or against the Association and (2) by ripeness because without a settlement or judgment establishing liability, there is no justiciable controversy. Neither party disputes that there has been no judicial determination of liability against

4

CX Transportation, TIC United, or any related entity. The record does not reflect (1) that Reliance National made any kind of coverage decision before being declared impaired; (2) that Webb filed a claim with Reliance National's receiver or the Association; or (3) that the receiver, the Association, or any other entity has made any coverage or liability determination.

The general rule in Texas is that an injured third party "cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment." *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997); *Great American Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969); *Owens*, 996 S.W.2d at 208; *see also Pool v. Durish*, 848 S.W.2d 722, 723 (Tex. App.—Austin 1992, writ denied) (general rule is that party who releases insured from liability retains no cause of action against insurer because insured must be liable for injury before insurer can be held liable). Webb does not assert that he would somehow be able to bring an action against Reliance National before obtaining some determination of liability on the part of CX Transportation. He contends instead that article 21.28-C gives him a statutory right to sue the Association without first obtaining a judgment against CX Transportation.

The Guaranty Act, article 21.28-C of the insurance code, is intended to "provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment" and to "avoid financial loss to claimants or policyholders because of the impairment of an insurer." Tex. Ins. Code Ann. art. 21.28-C, § 2; *see Chandler v. Jorge A. Gutierrez, P.C.*, 906 S.W.2d 195, 199 (Tex. App.—Austin 1995, writ denied). Formerly, article 21.28 governed the liquidation, reorganization, and conservation of insolvent insurers and operated alongside the Guaranty Act. *Berkel v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 92 S.W.3d 584, 588

5

(Tex. App.—Austin 2002, pet. denied); *Chandler*, 906 S.W.2d at 199; *see* former Tex. Ins. Code Ann. art. 21.28.[1] The Guaranty Act was initially formed to provide funds "that a receiver may draw upon to pay covered claims," and under the old version of the Act, a claimant had to first file his claim with the receiver, and then, if the receiver rejected the claim, proceed against the receiver in the receivership court. *Berkel*, 92 S.W.3d at 588, 590; *Bailey v. Brodhead*, 838 S.W.2d 922, 925 (Tex. App.—Austin 1992, no writ); *see* former Tex. Ins. Code Ann. art. 21.28, § 3(h). If the receiver determined the claim was covered by the Act's fund, he or she was to refer the claim to the Association for payment. *Berkel*, 92 S.W.3d at 588; *see* former Tex. Ins. Code Ann. art. 21.28, § 3(i). The receiver, not the Association, determined what claims were covered. *Berkel*, 92 S.W.3d at 590.

In 1991, however, the legislature substantially reworked the Guaranty Act and changed the Association's duties and responsibilities. The Association, which is required to pay "covered claims" against an insolvent insurer, is now charged with investigating, compromising, settling, and paying claims owed by an impaired insurer.[2] Tex. Ins. Code Ann. art. 21.28-C, § 8(a), (d); *Berkel*, 92 S.W.3d at 589. The Association is to "undertake to discharge the policy obligations" of an impaired insurer as far as those obligations are covered by the Act. Tex. Ins. Code Ann. art.

---

[1] In 2005, the legislature repealed article 21.28 effective September 1, 2005, and enacted chapter 21A of the insurance code, titled, "Insurer Receivership Act." *See* Act of May 30, 2005, 79th Leg., R.S., ch. 995, §§ 1, 9, 10, 2005 Tex. Gen. Laws 3307, 3362.

[2] A "covered claim" is "an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage." Tex. Ins. Code Ann. art. 21.28-C, § 5(8) (West Supp. 2005).

21.28-C, § 8(b). In other words, the Association now fills the role formerly filled by a receiver.[3]
However, the Association "shall not be considered to be in the business of insurance, shall not be considered to have assumed or succeeded to any liabilities of the impaired insurer, and shall not be considered to otherwise stand in the shoes of the impaired insurer for any purpose." *Id.*

Webb acknowledges that generally an injured third-party claimant cannot sue an insurer directly until there has been a determination of the insured's liability and, therefore, the insurer's obligation to pay the claim. *See Moxon v. Ray*, 81 S.W.2d 488, 489 (Tex. 1935); *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.); *Owens*, 996 S.W.2d at 208. However, he likens his situation to that of the claimant in *Bailey* and argues that under that logic, he should be allowed to proceed with a direct action against the Association without first obtaining a judgment against TIC United. In *Bailey*, which was governed by the pre-1991 statutes and brought under article 21.28, governing receivers, not the Association, an injured third-party claimant timely

---

[3] *See Global Santa Fe Corp. v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 153 S.W.3d 150, 152-53 (Tex. App.—Austin 2004, pet. denied) (Association claims examiner determined that injured third-party's claims "qualified as a covered claim under the Act and recommended that the Association" pay $300,000 towards settlement); *Lopez v. Texas Prop. & Cas. Ins. Guar. Ass'n*, 990 S.W.2d 504, 505-06 (Tex. App.—Austin 1999, no pet.) (holding that Association may review settlements, releases, and judgments to determine whether to contest them); *Texas Prop. & Cas. Ins. Guar. Ass'n v. Boy Scouts*, 947 S.W.2d 682, 690-63 (Tex. App—Austin 1997, no writ) (holding that Association could review settlements to determine whether they may be contested); *see also Woods v. Texas Prop. & Cas. Ins. Guar. Ass'n*, No. 03-01-00138-CV, 2001 Tex. App. LEXIS 8067, at *4 (Tex. App.—Austin Dec. 6, 2001, pet. denied) (not designated for publication) ("as the statutory successor to certain 'covered claims' against the receivership estate of the impaired insurer, the Guaranty Association is a proper party to any pending litigation involving a covered claim"); *Texas Prop. & Cas. Ins. Guar. Ass'n v. Webb*, No. 03-99-00293-CV, 2000 Tex. App. LEXIS 905, at *18-20 (Tex. App.—Austin Feb. 10, 2000, no pet.) (not designated for publication) (noting that in 1992, receivers' duties of administering, evaluating, and paying claims were transferred to Association and stating that legislature clearly intended Association to fulfill policy obligations of impaired insurers).

filed a claim with an insolvent insurer's receiver and, when the claim was rejected, timely filed suit against the receiver. 838 S.W.2d at 924. The receiver asserted a limitations defense, arguing that, although the claim and lawsuit were timely filed, the statute of limitations had run as to the claimant's claim against the insured. *Id*. Because the claimant no longer had a viable claim against the insured, the receiver argued that it had no obligation to pay the claim. *Id*. We held that because the statute allowed for the filing of an unliquidated claim with a receiver and a claimant need not obtain a judgment against the insured to win a suit against a receiver, it was not necessary to sue the insured, a "potentially useless act," before suing on a claim timely filed with and rejected by the receiver. *Id*. at 925. Instead, the timely filing of the claim tolled the running of limitations as to a claim against the insured and defeated the receiver's defense of limitations. *Id*.[4]

Under the old statutory scheme, a third-party claimant filed its claims with a receiver and proceeded against the receiver if the claims were wrongfully denied. *See id*. Under the new scheme, however, the Association, not a receiver, manages claims against an impaired insurer. *See generally* Tex. Ins. Code Ann. art. 21.28-C. Article 21.28 included unliquidated or undetermined claims in its provisions for filing claims with a receiver, *see Bailey*, 838 S.W.2d at 924 (citing former art. 21-28, § 3(d), (e)), but the Act does not refer to unliquidated claims in its definition of "covered

---

[4] We noted that article 21.28 (1) specifically allowed a third-party to file an unliquidated claim with a receiver; (2) allowed a receiver to pay such claims if the proof reasonably suggested that the third-party would be able to obtain a judgment against the insured; and (3) required the claimant to sue the receiver within three months after a claim was rejected. *Bailey v. Brodhead*, 838 S.W.2d 922, 924-25 (Tex. App.—Austin 1992, no writ) (citing former Tex. Ins. Code Ann. art. 21.28, § 3(e), (h)). We held that because a claimant need not obtain judgment against an insured to prevail against a receiver and because any such judgment would not prove liability in a suit against the receiver, there was no reason to require the claimant to sue the insured. *Id*. at 925.

claims."[5] *See* Tex. Ins. Code Ann. art. 21.28-C, § 5(8). Article 21.28 provided a claimant the right to sue a receiver after the rejection of a claim, *Bailey*, 838 S.W.2d at 924 (citing. former art. 21.28, § 3(h)), but the Act does not have similar language providing for a direct action against the Association.

We sympathize with Webb's situation, in which he finds himself attempting to sue the insured and the insurance company, both of which have filed for bankruptcy. However, we believe that the general rule requiring a liability determination, and not the holding in *Bailey*, should apply to this case for two reasons. First, the claims in *Bailey* were brought pursuant to article 21.28 and the old scheme, not the Guaranty Act. *Id*. at 925. Further, the suit in *Bailey* was brought after the receiver made a liability and coverage determination and rejected the claim, and article 21.28 specifically allowed a claimant to sue a receiver after the rejection of a claim. *See id.* at 924-25 (citing former art. 21.28, § 3(h)). The Guaranty Act contains no such provisions for an action against the Association, and Webb has not shown that he even filed a claim and obtained a liability determination or rejection by the Association.

We recognize that the Act's stated purpose is to avoid financial loss to claimants due to an insurer's impairment. *See* Tex. Ins. Code Ann. art. 21.28-C, § 2(2). However, under the statute's language and against the general framework applied to insurance companies and third-party claims and given these circumstances, we hold that Webb does not have the right to a direct action

---

[5] Indeed, we note that in its definition of "covered claims," the Act specifically provides that a "'[c]overed claim' shall not include, and the association shall not have any liability to an insured or third-party liability claimant, for its failure to settle a liability claim within the limits of a covered claim." Tex. Ins. Code Ann. art. 21.28-C, § 5(8) (West Supp. 2005).

against the Association.  The trial court properly determined that Webb lacks standing and a justiciable claim.  We overrule Webb's issue on appeal.

**Conclusion**

Webb is correct that under the post-1991 statutory scheme the Association is obligated to pay "covered claims."  However, the *Bailey* exception does not apply under the Act to allow a direct right of action by a third-party against the Association before liability has been judicially determined.  Without some determination of liability, there is no "covered claim" that the Association is required to pay.  We affirm the trial court's granting of the Association's plea to the jurisdiction.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   December 2, 2005